UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 19-CR-251 (RDM) |
| v. | : | |
| | : | |
| ANDRA VANCE, | : | |
| | : | |
| DEFENDANT. | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO CONTINUE TRIAL & DISMISS

The United States of America (the "Government"), by its undersigned counsel, responds to the Defendant's Motions to Continue (Dkt. 111) and Dismiss (Dkt. 112) and respectfully submits that (1) it has not acted to obtain an unfair advantage, violated its discovery obligations, or countenanced the intentional destruction of evidence; (2) the Defendant's complaints regarding recent disclosures, without more specifics, do not warrant a 90-day continuance for trial; and (3) the Court should set a short status date for the parties to inform the Court if additional time is necessary for the Government to answer the Defendant's outstanding discovery questions prior to setting a new trial date, or ruling on the Defendant's Motion to Dismiss. In support, the Government states the following:

### I.     The Defendant's Claims

The Defendant filed his Motion to Continue Trial (Dkt. 111) and his Motion to Dismiss Indictment (Dkt. 112) on June 30, 2022. In his Motion to Continue Trial, the Defendant asserts that, "[t]he amount of information the government has failed to provide in a timely fashion has made it impossible for defense counsel to properly prepare for a trial, and will make it impossible for [the Defendant] to receive a fair trial." (Dkt. 111 at 1). In support of his claim, the Defendant

also asserts that the Government has not complied with Local Rule 5.1 and that some of its recent disclosures contain *Brady*[1] or potential *Brady* (Dkt. 111 at 3), characterizing his recent receipt of information as an attempt by the Government to obtain an unfair advantage (Dkt. 111 at 3). The Defendant attributes the fact that the parties cannot reach a stipulation on admission of 404(b) evidence, not to a natural disagreement about the admissibility of evidence, but to a lack of good faith negotiation. (Dkt 111 at 4-5). Finally, the Defendant argues that the Indictment itself should be dismissed because the Government, acting in bad faith, destroyed potentially exculpatory emails. (Dkt. 112 passim).

The Government objects, in the strongest possible terms, to accusations that it has acted to obtain an unfair advantage, violated its discovery obligations, negotiated in bad faith, or countenanced the intentional destruction of evidence. Consistent with its discovery obligations, the Government has been providing discovery to the Defendant on an ongoing basis, and the Defendant is correct in asserting that some discoverable information has been provided quite recently. However, these recent productions have been of information *newly* discovered by *the Government itself* during the course of pretrial preparation. Far from illustrating any lack of care on the part of the Government, these productions illustrate that the Government is complying with its ongoing duty to provide discoverable information to the Defendant *as soon* as it learns of it. In fact, in an effort to expedite disclosures, in June 2022, the Government began using a secure file-sharing platform to disclose this material quickly and the Government emailed defense counsel alerting them to the new materials as they were uploaded to the file-sharing platform.

The Government likewise objects to the allegations that it deliberately countenanced the destruction of exculpatory evidence. As explained more fully below, the Government has learned

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 (1963).

that a handful of emails sent to Metro Transit Police Department (MTPD) Captain Daniel Alvarez, reportedly by non-percipient witnesses, may have contained "exculpatory" *speculative opinions* of the conduct of a Government witness with respect to this incident and the defendant's general good character. The Government is undertaking extensive efforts to continue to search for these emails or to uncover information about their content, and identify, locate, and interview the senders. To the extent that this evidence may have been destroyed, it was done so in the routine course of business, and not with the knowledge, much less at the direction of the Government.

II. **Newly Disclosed Information Developed and Obtained During Trial Preparation**

Most of the disclosures that the Defendant characterizes as untimely are disclosures of evidence developed since June 2022, during the course of trial preparation. These disclosures cannot be untimely, as they were produced to defense counsel—within days of and, at times, *the same day*—that the Government itself learned the information. The Government cannot produce information that it does not have; thus, earlier production would have been impossible. *United States v. Flynn*, 411 F. Supp. 3d 15, 32 (D.D.C. 2019) (Sullivan, J) (" *Brady* does not extend to information that is not within the government's possession . . . or information that the government is not aware of"); *Wright v. Stansberry*, 677 F. Supp. 2d 286, 288 (D.D.C. 2010) (Kollar–Kotelly, J.) ("The government could not have suppressed [a witness] statement because it never possessed that document. If the government does not possess the requested information, there can be no *Brady* violation.") (internal quotations and citations omitted); *United States v. Shark*, 158 F. Supp. 2d 43, 51 (D.D.C. 2001) (Penn, J), *aff'd,* 60 F. App'x 333 (D.C. Cir. 2003) (explaining on collateral review that no *Brady*-based prosecutorial misconduct had occurred because "since the government did not have such information, it could not have disclosed it."); *United States v. Spinner*, 109 F. Supp. 2d 18, 20 (D.D.C. 2000), *aff'd,* 22 F. App'x 6 (D.C. Cir. 2001) (Because

3

information about a witness's post-trial misconduct was not in the government's possession at the time of trial, "the government could not have disclosed it. Accordingly, there was no *Brady* violation."); *see also United States v. Thompson*, 426 F. App'x 860, 861–62 (11th Cir. 2011) (no discovery violation when the prosecutor, who learned about certain discoverable letters on the eve of trial, immediately forwarded the evidence to defense counsel.).

The Defendant makes several specific allegations regarding late disclosure. First, the Defendant takes issue with the two new expert witness disclosures. (Dkt. 111 at 2; Dkt. 105). In the Government's filing, it moved *in limine* to introduce the testimony of former MTPD Chief Ronald Pavlik and MTPD Captain Daniel Alvarez as hybrid lay and expert witnesses pursuant to Federal Rules of Evidence (FRE) 701 and 702 (Lay and Expert Witness Motion). (Dkt. 105).[2] The Government conducted witness interviews of Alvarez and Pavlik on June 2, 2022, and June 10, 2022, respectively. Summaries of these interviews were disclosed to the defense on June 8, and June 14, 2022, respectively—a matter of days later in each case and well in advance of the Government's timely filing. The Defendant does not contend that any expert testimony is exculpatory, nor could he, as the Government seeks to elicit (1) testimony that the Defendant's conduct is consistent with willfulness; and (2) factual testimony that allows the jury to infer intent. (Dkt. 105 at 14). Moreover, the Defendant was aware of both witnesses from Government disclosures made well in advance of trial. Therefore, the Government respectfully submits that any issue regarding its expert disclosures is without merit.

Second, the Defendant takes issue with the disclosure of a memorandum that MTPD Sergeant Rene Noboa wrote, and claims, without explanation, that the statement contained *Brady*

---

[2] The Government timely filed this motion in accordance with this Court's extended filing deadline after the Defendant filed an unopposed motion to continue the motions deadlines. (*See* Dkt. 101 and Minute Order, June 10, 2022).

material. (Dkt. 111 at 2, Exhibit 1, and USAO-VANCE-0811). As a preliminary matter, the Defendant is incorrect about the timing of this disclosure—the Government disclosed this statement on April 7, 2022—*not* on June 8, 2022 as the Defendant asserts. (Dkt. 111 at 2). Then, on June 2, 2022, the Government conducted a witness interview of Noboa and the Government disclosed a summary of this witness interview on June 8, 2022—six days later. That same day, the Defendant inquired about which memorandum Noboa was referring to in his interview and the Government again produced the memorandum (USAO-VANCE-0811) for the defense *within five minutes* of defense counsel's email. The Defendant (1) has not articulated what in Sergeant Noboa's memorandum contains *Brady;* and (2) has had ample time to conduct his own investigation into Sergeant Noboa's statements. Accordingly, the Government submits that this claim is without merit.

Third, the Defendant complains of a recent disclosure of a District of Columbia Fire & EMS Report[3] (EMS report) documenting victim D.C.'s initial treatment, and claims that it too contains *Brady* material. (Dkt. 111 at 2, Ex. 2). During its preparation for trial, the Government determined that it did not have this report in its possession and promptly requested it on June 14, 2022. The Government received this report on June 28, 2022, and disclosed it to the Defendant on the same day. Upon receiving the EMS report, the Defendant requested that the Government produce the EMS personnel who treated D.C., so that they could be interviewed. The Government, who had also just learned of these witnesses and had not yet had the opportunity to place them under subpoena for trial, provided the Defendant with contact information for the District of Columbia Fire & EMS to help facilitate the requested interviews. The Defendant does not support his claim that the EMS Report contains *Brady*, likely because the Defendant (1) has had

---

[3] The District of Columbia Fire & Rescue is a separate agency from MTPD.

information in *his* possession that D.C. was transported from the scene to Howard University Hospital since this matter was indicted and initial disclosures were made; and (2) has equal power to request the report but failed to do so. Instead, the Government obtained the EMS report, disclosed it within hours, and helped to facilitate the Defendant's investigation into the information contained within the report. Therefore, this claim is without merit.

Additionally, the Defendant complains that the Government disclosed *Giglio* material related to some of the Government's witnesses. (Dkt. 111 at 2-3). The Government made the standard *Giglio* request during the course of trial preparation. The Government received *Giglio* materials, promptly disclosed those materials, and is in the process of obtaining the underlying materials that the Defendant requested—even though those underlying materials are largely unlikely to reveal admissible impeachment evidence against the officers in question. The Government has produced this material in due course and any complaints to the contrary are without merit.

The Defendant complains that they have not received information with respect to a civil settlement that D.C. entered into related to the Defendant's use of force against him. (Dkt. 111 at 4). The Government learned of the civil settlement on June 10, 2022, during its interview with Pavlik. It promptly requested any materials related to the civil settlement from WMATA,[4] the agency that settled this matter, and was informed that (1) the matter settled in September 2018; and (2) that WMATA did not possess any witness statements related to that settlement. The Government disclosed this information, however, and out of an abundance of caution, it requested that WMATA again review their materials, and plans to provide any responsive information to the

---

[4] It is the Government's position that WMATA is not covered by Local Rule 5.1(e) but, nonetheless, made these requests to WMATA in an effort to obtain materials to the extent they exist.

6

Defendant upon receipt. Other than the recency of the disclosure, the Defendant does not make any claims about the effect of this recent disclosure. That is likely due to the fact that (1) on June 30, 2022, at a meeting with defense and later memorialized by email, the Government informed the Defendant that it did not intend to call D.C. at trial; and (2) defense counsel well knows that the existence of a civil settlement will not be admissible at trial unless D.C. testifies. Therefore, the Government respectfully submits that this complaint is without merit.

In sum, the recent disclosures that the Defendant complains of in his Motion to Continue (Dkt. 111) were the result of trial preparation. Contrary to the Defendant's claims that the Government is "intent on ensuring that the defense is unable to adequately prepare for trial," (Dkt. 111 at 6), it has promptly disclosed new information as it was received, and in so doing, has demonstrated the seriousness with which it takes its discovery obligations.

### III.     Complaint Regarding Proposed FRE 404(b) Stipulation

Additionally, the Defendant complains that the Government "had no intention of acting in good faith" with respect to a proposed stipulation regarding FRE 404(b) evidence. (Dkt. 111 at 5). Specifically, the Defendant complains that "the [G]overnment submitted a proposal that focused on the details of the events that were the ones that troubled the Court." (Dkt. 111 at 5). The Defendant's complaint is without support and should not be a basis upon which this Court determines whether a continuance is appropriate. In previous pretrial hearings, the Government represented that although it "had no problem with coming to a stipulation, we do think it's important that we point out that [the defendant] actually used force." (Dkt. 83 at 73, lines 15-17). The Government's proposed stipulation was not only in line with its original representations to the Court, but it also attempted to "sanitize" the use of force incidents to allay the Court's previous concerns about admitting the FRE 404(b) evidence. (Dkt. 41 at 58-61). When the parties were

7

unable to reach a stipulation with respect to the FRE 404(b) evidence—which is a common occurrence in pretrial negotiations, the Government timely filed its Supplemental Disclosure Pursuant to FRE 404(b) (Dkt. 103) to allow the Court to address this matter based on the parties' respective positions. Therefore, the Government submits that this complaint is wholly without merit and should be rejected out of hand.

### IV. Materials That *May* No Longer Exist

The defendant claims that Alvarez "*evidently* purposely did not keep copies of [emails regarding Ulrich's conduct], and knew that because they would be deleted from Metro's email system, no one else would be able to see them." (Dkt. 112 at 2) (emphasis added). There is no basis for this claim. In fact, during the course of trial preparation, the Government has identified some potentially discoverable materials that *may* no longer exist. Specifically, the Defendant complains—both in his Motion to Continue and his Motion to Dismiss—that MTPD Captain Daniel Alvarez failed to retain emails sent to Chief Pavlik regarding complaints that MTPD Officer Ulrich failed to take appropriate action during the Defendant's use of force against D.C. (Dkt. 111 at 2 and Dkt. 112). As explained more fully below, the Government is making efforts to determine whether these emails can be located from alternative sources or to determine whether it can identify all of the individuals who wrote emails to Chief Pavlik.

To make out a Due Process Clause, "the *defendant* bears the burden of proving that the government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence." *United States v. Burnett*, 827 F.3d 1108, 1116 (D.C. Cir. 2016) (emphasis in original); *United States v. Green*, No. CR 19-19 (RDM), 2021 WL 5043089, at *3 (D.D.C. Oct. 29, 2021) (Moss, J) (same).

To show bad faith, a defendant must show that the government had "knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *In re Sealed Case*, 99 F.3d

1175, 1178 (D.C. Cir. 1996) ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."); *Green*, No. CR 19-19 (RDM), 2021 WL 5043089, at *3 (Same).

Applying this standard, the Defendant's claim fails for several reasons (1) it is not yet clear that the emails are irretrievably lost, and the Government is continuing to make efforts to locate them; (2) to the extent that the authors of the emails can be located and can provide testimony consistent with their emailed statements, the emails themselves will not be material because their content will be duplicative; and (3) even if the material cannot be retrieved, the Defendant has not met his burden of showing that the Government has acted in bad faith.

As a threshold matter, the Defendant fails to mention several important facts regarding this recent disclosure. First, the potential existence of the emails was disclosed to the Defendant on June 7, 2022, when the Government disclosed an audio-recorded interview of MTPD Sergeant Salicia Belton. The Government learned of the existence of that recording during an interview on June 1, 2022, the summary of which was disclosed to defense on June 8, 2022. Upon receiving this disclosure, the Defendant requested the emails mentioned during Belton's interview. The Government conducted an initial inquiry to obtain those emails and learned that MTPD retains emails under their policy for 180 days. Those policies were disclosed to the defense on June 14, 2022.

On June 28, 2022, the Government met with Alvarez to see whether he had copies of these emails and, while he did not retain copies of the emails, he identified (1) two MTPD officers who sent emails to Pavlik; (2) the general substance of those emails; and (3) his reasons for not retaining the emails. The Government disclosed a summary of this information to the Defendant that same

day. Next, and also on June 28, 2022, the Government interviewed Anthony Reefers, a former MTPD officer who the Government anticipates will be a *defense* witness at trial, who (1) disclosed that he sent an email to Chief Pavlik regarding the Defendant's use of force and Officer Ulrich's conduct; (2) admitted that he was not present for the use of force and did not view the video surveillance that captured the use of force prior to sending this email; and (3) identified two additional MTPD officers who sent similar emails to Pavlik. The Government disclosed notes from Reefer's interview to the Defendant on June 30, 2022.

The Defendant's motion is, at best, premature as the Government has not yet conclusively determined that the emails have been destroyed. The Government has requested that the MTPD conduct an additional search of their email server for emails responsive to the Defendant's request. To date, the Government has located two emails that it will provide to the Defendant. Therefore, the Defendant's argument is void at the outset. The Government is taking additional steps to determine whether the contents of other emails can be recreated for the defense. The Government is also in the process of identifying all of the officers who have been identified as potentially sending emails to Pavlik regarding the Defendant and Ulrich. Between June 30, 2022 and July 1, 2002, the Government has provided notes from three separate interviews of officers who were identified as potentially sending these emails. Of those witnesses, two were previously known to the defense. Significantly, the Government received two emails from MTPD just minutes before this filing and will provide these emails promptly to the defense. These emails related to the Defendant's character. This information may render the Defendant's complaints regarding these emails in its Motions to Continue and Dismiss moot, as this information would render the emails cumulative and, thus, non-material. (Dkt. 111 & 112). It well may be that those who authored the emails have been available to the Defendant and that their opinions about the incident are already

known to him. In fact, the Government's investigation reveals that at least one of the individuals who drafted the emails is well-known to the Defendant and is likely to appear on his witness list.[5]

Finally, although the Defendant has made several assertions that the Government has acted in bad faith, he has not met his burden of proof on this issue. As noted above, the Defendant became aware of this issue when the Government provided him with a recording, thus bringing the matter to defense counsel's attention, hardly the conduct of prosecutors acting in bad faith. Afterwards the Government has made, and continues to make, repeated attempts to locate the emails and/or the authors of the emails, undermining any finding of bad faith. In fact, the Government found *two* relevant emails. Moreover, the Defendant cannot show that any arugable exculpatory nature of the emails was *obvious* when the emails reportedly consisted of the speculative opinions expressed by persons who were not present on the scene and who did not view the video.

Based on the Government's initial investigation into the contents of these emails, none of the identified officers were present for the use of force incident at the Anacostia Metro Station on February 16, 2018, nor did they watch the surveillance videos that captured the Defendant's use of force, prior to sending these emails. Any information that they have is likely based on either pure speculation on their part or self-serving statements that the Defendant made to justify his conduct.  Therefore, those witnesses' accounts would not be admissible at trial and the Court should exclude them.

## V.     Request for Status Conference

The Defendant has asked for a 90-day continuance but, as explained above, most of the information newly provided by the Government is either patently not exculpatory or impeaching,

---

[5] At the time of this filing, the Government has not received the Defendant's witness list.

11

or the evidence is *Giglio*[6] impeaching information regarding witnesses that have been the subject of previous disclosures. The Defendant has long been aware of the identities and statements of the majority of these witnesses and has had the opportunity to investigate their credibility. The information recently provided may provide additional fodder for cross-examination, but the Defendant has not shown why providing such impeaching information two weeks before trial necessitates a 90-day continuance. Other information relates to non-percipient witnesses who will likely be precluded from testifying based upon federal rules regarding hearsay.[7] The Defendant has not established why he needs a 90-day extension to evaluate this information. Moreover, as explained above, the Government is making efforts to locate emails requested by the Defendant; thus, the Government suggests a short status conference be set at the Court's discretion to determine the status of the Government's efforts, which it is anticipated should hopefully be completed in the coming days. At that time, the Court can evaluate whether a continuance should be granted.

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests that the Court (1) reject the Defendant's claims that it has not has complied with its discovery obligations, specifically finding that the Government did not engage in "bad faith" as alleged by the Defendant; (2) request that the Defendant provide more specifics to warrant a 90-day continuance; and (3) set a short status date for the Government to attempt to answer the Defendant's outstanding discovery requests prior to granting the Defendant's Motion to Dismiss.

---

[6] *Giglio v. United States,* 405 U.S. 150, 154-55 (1972).
[7] The Government recognizes that information need not be admissible to fall under its discovery obligations, *See* Rule LCrR 5.1(a), but the fact that evidence is almost certainly inadmissible undermines the Defendant's claim that he will need time developing the evidence and using it to prepare for trial.

12

Respectfully submitted this 1st day of July, 2022.

                                    **MATTHEW M. GRAVES**
                                    **UNITED STATES ATTORNEY**

By:         _/s/ Ahmed Baset_
                  AHMED BASET
                  Assistant United States Attorney
                  IL Bar No. 6304552
                  601 D Street, N.W.
                  Washington, D.C. 20530
                  (202) 252-7097


                  **KRISTEN CLARKE**
                  **ASSISTANT ATTORNEY GENERAL**

By:         /s/ Maura White
                  MAURA WHITE
                  Civil Rights Division, Criminal Section
                  Trial Attorney
                  IL Bar No. 6289336
                  950 Pennsylvania Ave, NW, 4CON
                  Washington, D.C. 20530
                  (202) 616-5103
                  maura.white@usdoj.gov