UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDRA L. VANCE,<br><br>*Defendant.* | Criminal No. 19-251 (RDM) |

## MEMORANDUM OPINION AND ORDER

Defendant Andra L. Vance was charged by indictment with two counts of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242. Dkt. 1. Count One alleges that Vance struck Darrell Craig "with a baton multiple times on the head without legal justification," while Count Two alleges that Vance "used his baton to choke [Craig] without legal justification, while [Craig] was on the ground." *Id.* at 1–2. After a six-day jury trial on these charges, the jury began its deliberations on November 9, 2022. Min. Entry (Nov. 9, 2022). The next day, the jury wrote the Court a note, asking: "Is there a legal definition of choking?" Dkt. 158 at 2 (jury note). After hearing argument from the parties, the Court instructed the jury as follows: "No, the relevant law does not define choking. The jury should give that term its ordinary meaning, as the jury understands it." *Id.* at 3 (Court response).

Vance now asks the Court to reconsider its response to the jury question and requests that the Court provide the jury with a dictionary definition of "choke" that a Magistrate Judge in the Eastern District of Michigan referenced in a report and recommendation on a motion for summary judgment in a § 1983 excessive-force case. Dkt. 160; *see Robinson v. Chapko*, 20-cv-10499, 2021 WL 5856333, at *5 (E.D. Mich. Oct. 29, 2021). For the reasons stated below, the Court will deny Vance's motion.

1

Vance asserts that the Court denied his initial request to provide the jury with a dictionary definition of "choke" because "Vance's propos[ed] [instruction] was . . . too favorable towards Mr. Vance." Dkt. 160 at 2. That assertion misstates the Court's ruling. The Court expressed concern not that Vance's proposed instruction was too favorable to the defense, but rather that different dictionaries would provide "different . . . definitions"—some more favorable in their emphasis than others—of a term that, ultimately, is "not defined in the law." Trial Tr. 17 (Nov. 10, 2022). Although the word "choke" does, as the Court explains in greater detail below, have a familiar meaning that is readily understood by persons lacking special training or expertise, the process of choosing between dictionary definitions risks emphasizing one aspect of that meaning over others; it also risks suggesting to the jury that the Court believes that a particular emphasis is warranted based on the facts of the case. In light of these considerations and, most significantly, the limited nature of the jury's question—which asked only whether there was a "legal definition of choking," Dkt. 158 at 2—the Court concluded that "what matters here for present purposes is . . . [the] ordinary and common understanding . . . of the term," which the jury is best equipped to determine. Trial Tr. 24 (Nov. 10, 2022).

In his motion for reconsideration, Vance again asks the Court to provide the jury with a dictionary definition of "choke," a term that he argues is not "within the common knowledge of the jury." Dkt. 162 at 3. But his argument ignores the jury's question, which asked only whether there is a "legal definition" of the term. Dkt. 158 at 2. Vance points the Court to no such *legal* definition, relying—at most—on a dictionary definition that a different court referenced in the context of deciding a civil excessive-force inquiry. Dkt. 160 at 1 (citing *Robinson*, 2021 WL 5856333). As the D.C. Circuit has explained, a district court may, in response to a jury question, "limit its response to [accurately] answering the jury's question," without expanding its answer

"beyond the limits of the jury's request for clarification." *United States v. Laing*, 889 F.2d 281, 290 (D.C. Cir. 1989).  The answer previously given—which responds directly to the jury's question and instructs them, in a limited fashion, that there is no "legal definition" of the term "choke"—is, therefore, sufficient.

To be sure, a judge must "instruct the jury clearly and fully[] on the principals of law that apply to and govern the case on trial," including on the "essential elements of the offense" and "words and phrases having technical meanings"—at least where those words and phrases appear in the language of the statute.  *United States v. Maude*, 481 F.2d 1062, 1075 (1973) (internal quotation marks omitted); *see also United States v. Robinson*, 435 F.3d 1244, 1250 (10th Cir. 2006) (collecting cases from the First, Seventh, Eighth, Ninth, and Tenth Circuits that support the notion that "[a] district court need not define a term when its use in jury instructions comports with its ordinary meaning" (internal quotation marks omitted)).  Here, of course, "choking" is not an element of a charge brought under 18 U.S.C. § 242.  Rather, the word was included in the indictment to describe the charge that the grand jury authorized the government to bring and to provide fair notice to Vance of that charge.  As the D.C. Circuit has explained, "a[n] amendment [to an indictment] is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury," while "[a] variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution." *United States v. Lorenzana-Cordon*, 949 F.3d 1, 5 (D.C. Cir. 2020) (internal quotation marks omitted).  There is no reason to believe that either of these purposes requires giving the word "choke" a technical or obscure meaning; to the contrary, the best way to serve both purposes is to give the term its ordinary, common-sense meaning.

Moreover, even if "choking" were an element of the offense at issue, Vance's argument would still be unavailing. Like the terms "home," "arrange," "induce," "possess" "conceal," and "business"—which the D.C. Circuit approvingly cited as examples of words "readily comprehended by persons of ordinary intelligence," *Maude*, 481 F.2d at 1075 & n.98—the term "choke" is both familiar as a matter of common usage and is, in this case, "applied . . . in [its] conventional sense," *id.* at 1075. The key point is that jurors can (and should) rely on the word's "widely accepted and familiar meaning," *id.* at 1076, rather than needing a specific technical or legal definition, *cf. Miller v. Neathery*, 52 F.3d 634, 638 (7th Cir. 1995) (concluding that failure to define "recklessly" in the instructions was error because it is an "enigmatic term" to which both "lawyers and lay persons alike find it difficult to ascribe a precise meaning"). That the government has not identified a specific case for the proposition that the word "choking" is a word "within the common knowledge of the jury," Dkt. 162 at 3, does not change that conclusion. Indeed, neither party has identified any case that is on point—presumably because the issue has not previously come up in any federal case.[1] Nor is that absence of precedent surprising, given the fact that the word "choke" does not appear in any federal criminal statute and that, in any event, jurors are eminently capable of giving the word its familiar, everyday meaning. The jury's query whether the term has a "legal definition" did not signal a lack of

---

[1] The only case that either party cites that even arguably addresses the issue is a decision from the Superior Court of the Virgin Islands, where the court rejected the defendant's contention that it had erred when it "did not provide the jury with a definition for the term 'choke.'" *People v. Robles*, 14-cr-24, 2017 WL 4082060, at *3 (V.I. Super. Ct. Sept. 11, 2017). That decision, however, sheds little light on the question presented here because the word "choke" was used only in testimony, and the defendant simply argued that the jury lacked a basis to connect that testimony with "strangulation," which was charged. *Id.* That argument failed for reasons unrelated to the question presented here; it failed because the witness "did not use the term 'choke' as a synonym for the term 'strangle' at trial." *Id.*

4

understanding of ordinary usage but, rather, understandable uncertainty regarding the relevant law.

It is, accordingly, **ORDERED** that Defendant's motion for reconsideration, Dkt. 160, is **DENIED**.

**SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  November 16, 2022